IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EFSTRATIA KYRIAKOULIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 7902 |
| ) | |
| DUPAGE HEALTH CENTER, LTD., d/b/a ) | |
| HEALTH STOP, DR. SYED NASIR GHANI, ) | |
| and JOSEPH ANTHONY PUTHENVEETIO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiffs' amended petition for attorneys' fees and costs in this wage and hour case following their recovery of a total of $8,777.50 in a three-day jury trial. The verified petition seeks $168,607.50 in attorneys' fees.  We instructed the parties to try to work out a settlement of the fees, but whatever efforts took place were unsuccessful.  We then ordered the parties to follow the procedures in Local Rule 54.3 and that has resulted in an amended petition by plaintiffs and a response by the defendants that objects to certain specific charges included in the petition and seeks reductions totaling $51,982.52. They also request that the plaintiffs' total fees be limited to $60,000.00 because of the small amount of their recovery.  The defendants do not object to the plaintiffs' requested hourly rates nor to the $4,998.09 in costs sought by the plaintiffs.

The original complaint named only one plaintiff, Efstratia Kyriakoulis. Later amendments added the plaintiffs Crystal Pfingston and Paula Patel.

Prior to filing suit, the plaintiff Kyriakoulis offered to settle her claim for a total of $11,250, plus attorneys' fees accrued to the date of the offer, November 19, 2010. (Exhibit 2 to plaintiffs' Amend. Mem.) In a letter dated March 7, 2011, the defendants offered $2,500.00, which would include costs and attorneys' fees, to settle Kyriakoulis's claim. Id., Ex. 4. They never made any offer to settle the claims of the plaintiffs Pfingston and Patel.

## **The Defendants' Objections**

We need not consider the portions of the fee petition to which there are no objections and will discuss only the items to which the defendants do object.

### **I. Drafting the Complaint**

This case was brought by the plaintiff Kyriakoulis under the Fair Labor Standards Act ("FLSA") and related Illinois statutes seeking unpaid wages and overtime compensation allegedly earned by her as a receptionist for the defendants, who operate a health clinic.

The defendants' first objection is to the $1,987.50 claimed by the plaintiffs for the six hours spent in drafting the six-count complaint. The defendants argue that three of the six counts were

"copied, almost word for word from an FLSA / class action amended complaint previously filed by plaintiffs' counsel in <u>Gerald Farmer v. Direct Sat USA</u>, 08 CV 3962." (Resp. at 2.) Defendants provide a table of the paragraphs in the <u>Farmer</u> complaint and the paragraphs in the <u>Kyriakoulis</u> indicating what they claim to be the identical language. They argue that, "[g]iven the degree of copying, it should not have taken six hours to draft the present complaint. Give counsel 2 hours; one hour each for drafting the complaint or $750.00." (Resp. at 2-3.)

We think the defendants have oversimplified the work in drafting the complaint. It is true that complaints in cases alleging violation of various federal statutes tend to be similar in format and language. But this is because the issues are pretty much the same from case to case, even though the facts differ considerably. Lawyers who specialize in wage and hour litigation on behalf of plaintiffs, as do the plaintiffs' attorneys in this case, would be inefficient if they did not recycle the language that has passed muster in previous wage and hour cases when they draft a new complaint. But it is not a matter of simply pressing a button and watching while a draft of a new complaint jumps out. While paragraphs are <u>similar</u>, they are rarely identical. Here, the <u>Farmer</u> case, which the defendants compare to this case, was a class action with only one plaintiff. <u>Kyriakoulis</u> was a single plaintiff individual action, with no class allegations. This required

changes in personal pronouns and deletion of language that was appropriate in the <u>Farmer</u> class action but not in <u>Kyriakoulis</u>. More than that, however, the <u>Kyriakoulis</u> and <u>Farmer</u> complaints have very different allegations concerning the parties to the litigation and particularly in regard to who did and failed to do what. Paragraphs 3 and 4 of <u>Kyriakoulis</u> contain detailed allegations about the roles of the two individual defendants in the operation of the health clinic in order to demonstrate that each of them is an "employer" subject to the requirements of the relevant statutes. While the language used to describe the roles of the two defendants is no doubt typical of language used to describe the roles of individual defendants in other wage and hour cases, we assume that the drafters of this complaint took care to insure that, as far as they could determine, the allegations did accurately describe what the two individual defendants did to render themselves "employers."

We are unable to say that six hours was an excessive amount of time to spend on drafting this complaint, and we overrule the defendants' objection to the dollar amount charged.

## II. TIME SPENT RESISTING DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTS OF THE COMPLAINT

In the <u>Farmer</u> case, <u>supra</u>, Judge St. Eve granted the defendant's motion for summary judgment as to three common law counts of the amended complaint alleging unjust enrichment, quantum meruit, and breach of implied contract. She held, in accordance

with the prevailing federal case law throughout the country, that such common law claims are <u>preempted</u> by the FLSA.

In the original complaint in this case, Count IV alleged unjust enrichment, Count V alleged quantum meruit, and Count VI alleged breach of implied contract. The defendants moved to dismiss those counts on the basis of <u>Farmer</u> and the numerous authorities cited in <u>Farmer</u>. Plaintiffs opposed the motion and claim $2,100.00 for the 4.2 hours they spent in drafting their opposing brief.

We granted the defendants' motion in a Memorandum Opinion issued June 9, 2011. Like Judge St. Eve, we held that the FLSA preempts state common law causes of action, citing some of the numerous authorities to that effect. We commented on the deficiency of the plaintiffs' counter-argument, noting that the cases they cited were obviously distinguishable in that they involved state law <u>statutory</u> causes of action.

The defendants argue that the plaintiffs should have known their common law counts would be met with a motion to dismiss and that the motion would be granted. The plaintiffs respond that they "had a good faith basis to believe their claims would withstand a motion to dismiss. As plaintiffs themselves concede, Judge St. Eve's non-binding decision was entered on summary judgment, not a motion to dismiss." (Pls.' Reply, p. 7.) But the question is one of law — whether state common law claims are preempted by the FSLA.

Whether that question of law is decided on a motion to dismiss or a motion for summary judgment is immaterial; the law is the same either way.

The fact is that plaintiffs' counsel had no good faith basis for including Counts IV, V, and VI in this complaint and the defendants' objection to the $2,100.00 plaintiffs claim for opposing the motion to dismiss is sustained.

### III. TIME SPENT ON MOTION FOR SUMMARY JUDGMENT

Counsel claim a total of $22,455.00 for their work on plaintiffs' motion for summary judgment. The defendants argue that the motion accomplished nothing and that counsel should receive nothing for their efforts. In fact, the motion did accomplish something. It was orally argued on July 18, 2012, and at the conclusion of the arguments we granted the motion on two issues: (1) contrary to the defendants' contention, the plaintiff Pfingston is not a "volunteer" — she could not waive her rights under the FLSA and was entitled to compensation for all work that she performed; and (2) the defendant Anthony Puthenveetio was an "employer" within the meaning of the FLSA and state labor laws.

The plaintiffs' motion also sought judgment for specific monetary amounts in favor of each of the three plaintiffs on the basis that there were no genuine factual issues concerning their entitlement to those amounts. We found against the plaintiffs on these aspects of their motion, concluding that there were genuine factual issues in regard to the defendants' liability to each of

them. These issues are what occupied us in the three-day trial. The defendants contended that the plaintiffs did not work the overtime they claimed, and, even if they did, the defendants did not know about it and could not with reasonable diligence have discovered that they worked the overtime hours. (See Court's Jury Instructions Nos. 9 & 10.) The facts were obviously disputed. The disputes were genuine; their resolution depended upon credibility determinations that had to be made by the trier of fact. A reasonable, but unsuccessful argument for summary judgment is compensable. See Jaffee v. Redmond, 142 F.3d 409, 414 (7th Cir. 1995) ("[T]he touchstone in such a case is not whether a particular argument was successful, but rather whether it was reasonable."). But the portion of the plaintiffs' motion devoted to the amounts they claimed that they were entitled to receive was unreasonable.

If the plaintiffs' time records showed how much time was spent on the unreasonable portion of its motion, we could simply deduct the amount of claimed fees that were related to that work. However, the time records show the time spent on summary judgment without indicating what specific amounts of time were spent on any of the issues as to which summary judgment was sought. It was important to establish as the law of the case that the plaintiff Pfingston could not waive her rights under the FSLA and could not be found to have worked overtime as a volunteer if the defendants knew or with reasonable diligence could have discovered that she was working overtime hours. But how much work did it take to

persuade us that that is indeed the law? Surely plaintiffs' counsel, who have specialized for years in FSLA cases, knew that to be the law before they ever heard of Crystal Pfingston. While the fee petition makes general references to time spent on "legal research," we doubt that any significant time was spent on the non-waiver rule. On the question of whether Anthony Puthenveetio was an employer or not, counsel were fully familiar with the law applicable to that question, and no legal research would have been necessary. Investigation as to what Mr. Puthenveetio did and failed to do in the operation of the health clinic would have taken some time. The need for a finding that Puthenveetio was an employer is unclear, inasmuch as the corporate defendant, DuPage Health Center Ltd. and Dr. Syed Nasir Ghani, President and principal shareholder, admitted that they were employers.

We believe that a fair estimate of the fair value of the time plaintiffs' counsel spent on the two successful items of their summary judgment motion is fifteen percent of the claimed $22,455.00. We therefore reduce the fees claimed for the summary judgment motion by $19,086.00.

### IV. FEES INCURRED BECAUSE OF THE CONTINUANCE OF THE TRIAL DATE

The case was set to go to trial on July 26, 2012. The court and the parties were prepared to proceed on that date, but, approximately two days before July 26, one of the plaintiffs was arrested and incarcerated. No one knew how long the plaintiff

would be incarcerated, so the trial was continued to November 5, 2012. The defendants object to the $24,920.00 in fees claimed by the plaintiffs for time spent preparing for the November trial. "Plaintiffs, not Defendants, caused this continuance. Plaintiffs, not defendants, should accordingly be responsible for plaintiffs' counsel bringing themselves up to speed for the second trial [date]." (Defs' Mem. at 5.) In reply, the plaintiffs do not deny that the time spent by their attorneys in getting ready for the November trial resulted in fees of $24,920.00; that their preparation was duplicative; and that the continuance of the trial was necessitated by the fact that one of the plaintiffs was arrested and incarcerated. Their only argument is that defense counsel charged <u>his clients</u> for 10.75 hours of time getting ready for the November trial. Therefore, "Defendants' hypocrisy is staggering. Plainly, Defendants themselves recognize, by paying their counsel's invoice for these same services, they recognize that it was reasonable, necessary and warranted for their own counsel to 'get up to speed' for the second trial." (Pls.' Reply, p. 8) But plaintiffs miss the point. Of course defense counsel was entitled to be paid for work that was necessitated by the trial continuance. Similarly, the plaintiffs' attorneys are entitled <u>to be paid by the plaintiffs</u> for the time they spent getting up to speed. But the plaintiffs offer no reason why defendants should have to pay the plaintiffs' fees occasioned solely because of plaintiffs' need for a trial continuance. We sustain the

defendants objection and will deduct the sum of $24,920.00 from the fees claimed by the plaintiffs.

### V. "IMPROPER FEES/PILING ON"

This is an objection to miscellaneous items. (Defs.' Mem. at 6-7.) They object to a $300.00 item for filing a motion to strike defendants' sur-reply. "The Court indicated that this motion was improper and denied it." The defendants give no reference to the record to support their indication that we held the motion to be "improper," and we think it more likely that we simply held that although the sur-reply was filed without leave of court we would consider it anyway and give plaintiffs leave to respond if they desired to do so. In any case, we overrule the objection.

Defendants object to a $275.00 charge for legal research done by "someone named Mark." Defendants are correct that the subject of the research is not identified and we therefore have no way of knowing if it was necessary or that the amount of time was reasonable. The objection is sustained and $275.00 will be deducted.

The remaining objections in this category are directed to $125 charges for work done by persons who are obviously paralegals. The defendants argue that the work is law firm overhead, but plaintiffs are correct that the type of work performed (filing, drafting of notices and the like) is appropriate for paralegals to perform. We take judicial notice of the fact that $125 an hour is an appropriate rate for paralegals. We overrule this objection.

## VI. <u>PROPORTIONALITY</u>

The defendants object to $10,500 in fees sought by attorney Zouras for over 70 meetings with and emails to attorney Fizcko. They object as well to the $2,475.00 attorney Fizcko seeks for more than 30 meetings with and emails to attorney Zouras. (Defs.' Resp. at 7-8.) Defendants concede that they "understand the need for counsel to meet," but argue that the needs of this case did not require that much conferring and emailing between counsel. They suggest that the propriety of these fees "can only be evaluated via proportionality," citing the comment of the Seventh Circuit in <u>Bauer v. J.T. Joint Arbitration Bd. of Plumbing Contractors and Chicago Journeymen Plumbers' Local Union 130, U.A.</u>, 562 F.3d 784, 793 (7th Cir. 2009) that "we have also considered the proportionality of attorneys' fees and the total damage award as a factor in determining the overall reasonableness of the fee request." We will deal in a moment with the question of proportionality. The problem we see in the hours spent by attorneys Fizcko and Zouras is that they are documented insufficiently to satisfy us that the plaintiffs have met their burden of proving that the hours were truly necessary. A number of the conferences and emails are listed simply as that – "conference" and "email" with no indication of the subjects discussed. The majority of the entries, however, do indicate, in very general terms, what the subject matter was – <u>i.e.</u> "discovery," "meeting re court tomorrow," "meeting re defendants' discovery responses and

other matters," and "meeting re deps next week." This was not a complicated case. One attorney, rather than two, could have handled it. It appears that Messrs. Zouras and Fizcko conferred with or emailed each other, or both, about every step that was taken in the case. More documentation than they have given us would be necessary to carry their burden of demonstrating that this was necessary work. We believe that a reasonable reduction of the amount requested for these conferences and emails would be fifty percent of the $12,975.00 requested. We will therefore deduct $6,400.00.

As for making the fee award proportional to the amount of plaintiffs' recovery in the case, both sides recognize that it is sometimes necessary for plaintiffs to incur fees far in excess of the small recoveries typically awarded in FLSA cases if they are to recover anything at all. Anderson v. AB Painting & Sandblasting, Inc., 578 F.3d 542, 546 (7th Cir. 2009). Unless plaintiffs' counsel have a reasonable expectation that the fee award for a successful claim will fully compensate them for the necessary work, plaintiffs would be unable to find competent counsel willing to take on these cases. In this case, the defendants fought every step of the way, as they were entitled to do. But their experienced counsel surely knew the risk they were taking in regard to the possible fee award. The defendants suggest that the total award should be limited to $60,000.00. (Defs.' Mem. at 8.) This, in our view, would be contrary to the applicable law. We have

ruled on the specific objections the defendants have made to the plaintiffs' fee petition and the combined reductions we have found appropriate come to 52,781.00. Subtracting this amount from the $168,607.50 requested, we award the plaintiffs their attorneys' fees in the amount of $115,826.50, plus costs of $4,998.09, for a total of award at this time of $120,824.59.[1]

DATE:   March 27, 2014

ENTER:  _____
        John F. Grady, United States District Judge

---

[1] The amounts deducted are $2,100.00 for opposing the motion to dismiss, $19,086.00 for the unreasonable portions of plaintiffs' summary judgment motion, $24,920.00 for "getting up to speed" for the November trial, $275.00 for undocumented legal research, and $6,400.00 for conferences and emails between attorneys Fizcko and Zouras, for a total of $52,781.00.